UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:14-cv-158-FDW

| | |
|---|---|
| JAMES SAMUEL HILL, JR., )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>) **ORDER**<br>PATSY L. CHAVIS, )<br>)<br>Respondent. )<br>_____ ) | |

**THIS MATTER** comes before the Court on Respondent's Motion for Summary Judgment, (Doc. No. 7).

**I.     BACKGROUND**

Pro se Petitioner James Hill, Jr., is a prisoner of the State of North Carolina, who, on August 14, 2012, in Catawba County Superior Court, was convicted after trial by jury of robbery with a dangerous weapon and possession of a firearm by a felon, and was sentenced to consecutive terms of 111-143 and 22-27 months imprisonment, in cases 11 CRS 4537 and 51882. On December 3, 2013, the North Carolina Court of Appeals filed an unpublished opinion finding no error and on January 23, 2014, the North Carolina Supreme Court denied Petitioner's petition for discretionary review. See State v. Hill, 753 S.E.2d 740 (2013), review denied, 367 N.C. 298, 753 S.E.2d 676 (2014). Petitioner was represented at trial by Mitchell A. Walker and on appeal by Jon H. Hunt and Benjamin Dowling-Sendor.

On June 26, 2014, Petitioner filed a pro se motion for appropriate relief ("MAR") in Catawba County Superior Court. (Doc. No. 8-11: Ex. 10). On July 7, 2014, the MAR was

1

summarily denied.[1] (Doc. No. 8-12: Ex. 11). On August 18, 2014, Petitioner filed a pro se certiorari petition in the North Carolina Court of Appeals. (Doc. No. 8-13: Ex. 12). On September 4, 2014, the state filed a response. (Doc. No. 8-14: Ex. 13). On September 8, 2014, certiorari was denied. (Doc. No. 8-15: Ex. 14).

Petitioner placed the instant petition in the prison system for mailing on September 30, 2014, and the petition was stamp-filed in this Court on October 7, 2014. Petitioner brings the following claims in the petition: (1) he received ineffective assistance of trial counsel for various reasons; (2) trial counsel withheld evidence and did not allow Petitioner obtain witnesses for trial, and the state did not allow the witnesses to be admitted in the later stages of trial, causing prejudice; (3) Petitioner's due process rights were violated because a prior judgment was entered into evidence and passed to the jury un-redacted; Ms. Lisa Baker was used as a witness but was not listed on discovery; the identification process was violated because witnesses were not accurate in their first descriptions, and Petitioner was not put in a line-up or photo array but was singled out in court unconstitutionally; and (4) Petitioner received ineffective assistance of appellate counsel because appellate counsel did not investigate trial counsel's ineffectiveness and simply filed an Anders brief, leaving Petitioner without counsel on appeal.

On November 14, 2014, Respondent filed the pending motion for summary judgment. (Doc. No. 7). On November 17, 2014, this Court entered an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), granting Petitioner fourteen days to respond to the summary judgment motion. (Doc. No. 9). On November 21 and 24, 2014, Petitioner filed responses to the summary judgment motion. See (Doc. Nos. 10; 11; 12).

---

[1] The MAR Court denied the MAR on the merits and, alternatively, based on procedural bar.

The state's brief on direct appeal to the North Carolina Court of Appeals summarized the facts as follows:

> On April 4, 2011, two armed men robbed the Dollar General Store on Highway 70 in Hickory. Ms. Catherine White, the assistant manager of the Dollar General, testified that on that day shortly after opening the store at 8:00 am, she was in the store's office which is located in the back of the store. While in the office, she could see the front of the store through monitors which showed various areas of the store through several surveillance cameras. Through one of the monitors, White saw a man in the front of the store at the cash register, and she left the office and began walking to the front of the store. White described this man as a tall, black male who wore dark clothing, a black toboggan, and gloves.
> On White's walk to the front of the store, she was met by a second man who was holding a handgun. The second man was described by White as a white male wearing dark, heavy clothing, a baseball cap, and a fake beard. White testified that this second man pointed the handgun at White and said, "This is a robbery. I want you to go to the front, open up the cash register so I can get the money. I want to get the money." In court, White identified Defendant-Appellant as the robber who had pointed the handgun at her.
> This second man with the handgun then ushered White to the front of the store where she opened the cash register drawer and the safe. White stated that the two men took an unknown amount of cash from the register (maybe $80 to $90), a white basket from the safe containing $500, and a bank deposit bag containing an unknown amount (maybe $1,500). According to testimony from Whitney Thomas, store manager of this particular Dollar General store, the two men took around $2,300.00 dollars before leaving.
> After the two men left the Dollar General store, they got into a small blue-gray sedan parked outside. A witness, Amber Collins, who worked at the pet store beside the Dollar General, saw the two men enter and leave the store. Collins testified that both men were wearing heavy winter clothing, fake beards, and gloves as they approached the store. She testified that the two men were only in the store for about four to five minutes. Upon leaving the store, Collins noticed that the driver had some type of box in his arm. Collins testified that she was suspicious and checked the license plate as the driver sped off, but there was duct tape covering the license plate. She continued watching and saw that the driver ran the red light to enter onto Highway 70.
> At this point, Eric Young was entering the parking lot when he noticed a blue-gray Nissan Altima exiting the parking lot erratically and running a traffic light. He became more suspicious after seeing duct tape covering the center of the license plate, and so he began following the Nissan. Next, he saw the car pulled to the side of Highway 321, and he observed the passenger getting out of the car and removing the duct tape from the license plate. At this point, Young called 911 to report the Nissan that he thought might have been involved in a

robbery. He gave the dispatcher the tag number and continued following the car to a store parking lot and then a gas station. Young saw both of the car's occupants remove some of their outer clothing at the gas station. Young continued to follow the Nissan as it left Catawba County and went into Burke and Caldwell Counties.

Officer Shane Bumgarner of the Hickory Police Department got behind the Nissan at a stoplight and activated his car's siren and blue lights. The Nissan, however, did not stop. Officer Bumgarner followed the Nissan for forty minutes into a neighboring county before another officer was able to deploy "stop sticks" to deflate the Nissan's tires and bring the car to a stop. Officer Bumgarner, joined by officers from other agencies, arrested the driver and the passenger of the Nissan.

Officer James Mathis of the Hickory Police Department was one of the other officers in pursuit of the Nissan on April 4, 2011. Officer Mathis removed the passenger from the Nissan and placed him under arrest. From the witness stand, Officer Mathis identified Defendant-Appellant as the passenger. Officer Mathis testified that after he placed Defendant-Appellant in handcuffs, Defendant-Appellant told him that there was a gun in a pouch that was tied around his waist. Officer Mathis looked in the pouch and saw a silver .380 caliber pistol and "quite a bit of money."

Through the testimony of four police officers, the state presented evidence of the contents of the Nissan driven by Defendant-Appellant's co-defendant. Inside the Nissan, officers found, inter alia, the following: a First Citizens Bank deposit bag, a white plastic Sterilite basket, gloves, duct tape, currency ($1,955.01), several items of dark clothing, knives, nun chucks, brass knuckles, a BB gun, and a fake beard.

The state also presented evidence that Defendant-Appellant had been convicted of a breaking and entering. Defendant-Appellant pled guilty to that charge on July 10, 2002. The defense presented no evidence in this trial.

(Doc. No. 8-7: Ex. 6).

## II. STANDARD OF REVIEW

A. Summary Judgment Standard

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to

the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

B. Section 2254 Standard

In addition to the motion for summary judgment standard set forth above, this Court must also consider the Petition for Writ of Habeas Corpus under the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Young v. Catoe, 205 F.3d 750, 755 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court adjudication is "contrary to" clearly established federal law only

5

if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "It is not enough for us to say that, confronted with the same facts, we would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, 647 F.3d at 103 (citing Williams v. Ozmint, 494 F .3d 478, 483-84 (4th Cir. 2007)). "[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Id. at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)).

### III. DISCUSSION

#### A. Petitioner's Ground One

In his first ground for relief, Petitioner contends that he received ineffective assistance of trial counsel for various reasons. Specifically, Petitioner asserts that trial counsel (1) failed to present evidence at trial showing where Petitioner got his money that police took from the car, (2) failed to call witnesses for the defense when requested, (3) did not give Petitioner a copy of discovery when requested, (4) failed to object to a number of constitutional violations at trial, and (5) failed to serve notice of appeal, thus leaving Petitioner without counsel at an important stage. The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him.

6

See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000). Finally, a federal habeas court's review of a state court's denial of an ineffective assistance of counsel claim is "doubly deferential." Harrington v. Richter, 131 S. Ct. 770, 786-88 (2011). That is, when both § 2254(d) and Strickland apply, the question becomes whether "there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 788.

Petitioner raised the substance of first ground for relief in his MAR, and the MAR Court summarily denied the claim on the merits. (Doc. No. 8-12: Ex. 11). The MAR Court's adjudication was neither contrary to, nor an unreasonable application of clearly established Supreme Court law nor was it based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings. Here, none of Petitioner's satisfy the Strickland standard. First, as to counsel's alleged failure to file a notice of appeal on Petitioner's behalf, although Petitioner failed to properly perfect his appeal, the North Carolina Court of

Appeals exercised its discretion to allow his contemporaneously filed certiorari petition to give Petitioner direct appellate review of his case as if the appeal had been perfected. State v. Hill, 753 S.E.2d 740. Thus, Petitioner has failed to show prejudice under Strickland. As for Petitioner's remaining assertions of ineffective assistance of trial counsel in his first ground, all of these assertions are unsupported, conclusory allegations. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992). Thus, the MAR Court's denial of these claims was neither contrary to nor an unreasonable application of clearly established Supreme Court law. Moreover, there was overwhelming evidence of Petitioner's guilt, as he and his co-perpetrator were caught red-handed shortly after the armed robbery. Thus, even assuming that trial counsel's performance was deficient, this did not have a "substantial and injurious" impact on the verdict, and was harmless for purposes of federal habeas review. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (harmless error standard on federal habeas review requires trial error to have "substantial and injurious effect or influence in determining the jury's verdict" to warrant relief) and Fry v. Pliler, 551 U.S. 112 (2007) (Brecht's "substantial and injurious effect" standard applies on federal habeas review whether or not the state appellate court found error or applied the "harmless beyond a reasonable doubt" standard of Chapman v. California, 386 U.S. 18 (1967)).

In sum, Petitioner's first ground for relief is denied.

B. Petitioner's Ground Two

In his second ground for relief, Petitioner contends that trial counsel withheld evidence and did not allow him to obtain witnesses for trial, and the prosecution did not allow the witnesses to be admitted in the later stages of trial, causing prejudice. This contention is in essence a re-assertion or slight permutation of Petitioner's first ground for relief. Thus,

8

Petitioner's second ground for relief is denied for the same reasons his first ground for relief is denied.

In sum, Petitioner's second ground for relief is denied.

C. Petitioner's Ground Three

In his third ground for relief, Petitioner contends that his due process rights were violated because a prior judgment was entered into evidence and passed to the jury un-redacted; Ms. Lisa Baker was used as a witness but was not listed on discovery; the identification process was violated because witnesses were not accurate in their first descriptions; and Petitioner was not put in a line-up or photo array but was singled out in court unconstitutionally. Petitioner raised the substance of his third ground for relief in his MAR, and the MAR Court summarily denied the ground for relief on the merits. The MAR Court's adjudication of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. This is because Petitioner's unsupported assertions fail to show any constitutional violation or any other impropriety in his convictions. Moreover, given the overwhelming evidence of Petitioner's guilt as set forth in the above statement of facts, any potential error did not have a "substantial and injurious" impact on the verdict, and was harmless for purposes of federal habeas review.

In sum, Petitioner's third ground for relief is denied.

D. Petitioner's Ground Four

In his fourth ground for relief, Petitioner contends that he received ineffective assistance of appellate counsel because appellate counsel did not investigate trial counsel's ineffectiveness and simply filed an Anders brief, leaving Petitioner without counsel on appeal. Petitioner raised the substance of his fourth ground for relief in his MAR, and the MAR Court summarily denied

9

the claim on the merits. The MAR Court's adjudication of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. As explained above, Petitioner has failed to show ineffective assistance of trial counsel, or any other prejudicial error at trial. Thus, appellate counsel could not have been ineffective under Strickland for failing to raise conclusory, meritless claims. See Sharpe v. Bell, 593 F.3d 372, 383 (4th Cir. 2010) ("Counsel is not required to engage in the filing of futile motions.").

In sum, Petitioner's fourth ground for relief is denied.

### IV. CONCLUSION

For the reasons stated herein, Respondent is entitled to summary judgment as to all of Petitioner's claims.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment, (Doc. No. 7), is **GRANTED**.

2. It is further ordered that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

_____
Frank D. Whitney
Chief United States District Judge